**DAVID J. HOLDSWORTH** (4052)

Attorney for Plaintiff

9125 South Monroe Plaza Way, Suite C

Sandy, UT  84070

Telephone (801) 352-7701

Facsimile (801) 567-9960

david_holdsworth@hotmail.com

RECEIVED
2024 FEB 14
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | | |
|---|---|---|
| LARRY HARDY, | : | **COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| | : | Case: 1:24-cv-00026 |
| v. | : | Assigned To : Bennett, Jared C. |
| | : | Assign. Date : 02/14/2024 |
| LEGGETT & PLATT, INC., | : Civil No. | Description: Hardy v. Leggett & Platt |
| | : | |
| Defendant. | : Hon. | |

COMES NOW the Plaintiff, Larry Hardy, complains of Defendant

Leggett & Platt, Inc., demands trial by jury and as and for facts and causes of action

alleges as follows:

**PARTIES**

1.      Larry Hardy is a citizen of the United States and, at all times

relevant hereto, was a resident of the State of Utah.

2.      The entity Plaintiff names as Defendant herein is Leggett & Platt,

Inc.  On information and belief, Plaintiff alleges that, at all times relevant hereto,

Leggett & Platt, Inc., (hereinafter "Defendant" or "L&P"), was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act, as amended, which did business in the State of Utah, which employed 15 or more employees, including Plaintiff.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the instant case pursuant to federal question — namely, the interpretation and application of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and the Americans with Disabilities Act of 1990 ("ADA"), as amended, which provides that it is unlawful to discriminate against an employee in his employment on the basis of his disability, and to retaliate against an employee for engaging in protected activity.

4.     Venue in this Court is proper in that the employment practices alleged herein to be violative of Title VII and the ADA were committed within the jurisdiction of the State of Utah.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.     On or about May 15, 2022, Plaintiff filed a Charge of Discrimination with the Utah Labor Commission's Antidiscrimination and Labor Division ("UALD") in which he alleged that Defendant had discriminated against him based on disability, and had retaliated against him for engaging in protected activity.

6.      Plaintiff filed his Charge of Discrimination within 180 days from the last date of the alleged harm.  Plaintiff alleges all jurisdictional requirements have been met, as required by Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990, as amended.

7.      On or about December 22, 2023, the Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a Notice of Right to Sue.

8.      Thus, all jurisdictional requirements have been met as required by Title VII and the ADA.

## STATEMENT OF FACTS

9.      Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 8 above as if alleged in full herein.

10.      Plaintiff alleges that Defendant discriminated against him, in violation of the ADA.

11.      Plaintiff alleges that he is a person with a disability in that he has a traumatic brain injury ("TBI") and post-traumatic stress disorder ("PTSD").

12.      Plaintiff alleges that such physical and mental impairments substantially limit his ability to care for himself, concentrate, interact with others, think, learn, speak, sleep and work.  In particular, Plaintiff alleges he has symptoms of nightmares, inability to sleep, and has a slow transition between sleep and

3

consciousness when experiencing PTSD episodes, and, thus, difficulty in waking up and getting going in the mornings and wearing face coverings, such as masks.

13.    Plaintiff alleges he was a qualified individual with a disability in that he holds a commercial driver's license ("C.D.L.") and has substantial past work experience as a truck driver.  He can drive both standard and specialty trucks, with or without reasonable accommodations.

14.    Plaintiff alleges that, in early October 2021, L&P hired him to work as a delivery driver, contemplating that he would work about 60 hours per week.

15.    Plaintiff alleges that, on October 14, 2021, L&P evaluated his driving and he passed a road examination, which was conducted by Chris Howcroft ("Howcroft").

16.    Plaintiff alleges that Defendant has a "no-fault" attendance policy. This policy counts each tardy arrival as 0.5 absence points or 1.0 points if the tardy arrival is over two hours from the scheduled start of shift.  A medically excused absence or tardy arrival is not counted as an absence point.  Each six-month period, an employee is allowed to accumulate 4.0 absence points.  This policy on tardy arrivals requires a call into a supervisor within 30 minutes of the scheduled start time unless alternative arrangements are made with the supervisor.

17.     Plaintiff alleges that, during the hiring process, he disclosed that he had a disability and had some restrictions on the tasks he would be able to perform, including arriving on time for work.  And so he requested an accommodation in the form of some flexibility with respect to his arrival times.  Plaintiff alleges that he was informed by someone in L&P's Human Resources Department that he had six to eight minutes after the time the shift was to start to be considered on time, so it was unlikely that he would need additional accommodation for late arrivals.  Plaintiff alleges that this information was at odds with the tardy policy contained in the employee handbook and that this response was, in effect, a denial of his request for reasonable accommodations.

18.     Plaintiff alleges that Defendant, through Human Resources, asked him to wear a mask on a full-time basis while in the company's office building.  Plaintiff alleges that this requirement exacerbated his disability symptoms and led the number of tardy/late arrivals to increase.

19.     Plaintiff alleges that, in October 2021 because, due to his disability, Plaintiff is unable to wear a face mask for extended periods of time, he requested a reasonable accommodation in the form of being allowed to wear a face mask for only short periods of time.  Plaintiff alleges that, to support his request for a reasonable accommodation, he provided a hard copy of a doctor's note regarding his

restrictions in wearing a face mask for long periods of time to the Human Resources Department.

20.    Plaintiff alleges that Kami Carter ("Carter") of the company's Human Resources Department later informed him that he only could not wear a face mask when he was within his truck, but would have to wear a face mask at all other times.  Carter instructed him that, if that requirement would not work for him, then he needed to take unpaid leave.

21.    Plaintiff alleges that, on October 25, 2021, Carter asked him to provide additional information regarding the reasonable modification of the masking policy from Plaintiff's doctor.

22.    Plaintiff alleges that he provided such additional paperwork to Dr. Parley Williams ("Dr. Williams"), who, in turn, complted the paperwork and provided it directly to Carter.

23.    Plaintiff alleges that he made an effort to comply with the company's mandatory face mask wearing policy and wore his face mask more frequently than his doctor recommended.  Plaintiff alleges that this exacerbated his PTSD symptoms and caused him, in late October and November 2021, to arrive late to his shift on multiple occasions.

24.    Plaintiff alleges that, on December 8, 2021, his supervisor, Chris Howcroft ("Howcroft"), gave him a written disciplinary notice for excessive tardy arrivals.  This written warning provided nine dates of tardy arrivals, including November 1, 2021.  Plaintiff alleges that November 1, 2021 was not a date on which he had a tardy arrival.

25.    Plaintiff alleges that this was the first warning the company issued to him regarding tardy arrivals.

26.    Plaintiff alleges that, of the eight tardy arrivals which actually occurred, seven of the arrivals were less than 15 minutes late based on the scheduled arrival time and that three of those seven arrivals were under 10 minutes late from the scheduled arrival time.

27.    Plaintiff alleges that, after Defendant issued him a disciplinary write-up for tardiness, he alleges that he reminded Human Resources of his need for accommodation with late arrivals and provided another doctor's note supporting his request.

28.    Plaintiff also alleges that, in December 2021, he reiterated his request for reasonable accommodation in the form of a reasonable modification of the company policy on having to wear face masks.  On December 15, 2021, Plaintiff had Dr. Williams write a letter outlining Plaintiff's TBI and PTSD with symptoms of

7

insomnia and late wake-up in further support of Plaintiff's request to be accommodated

for late arrivals to work and flexibility with respect to having to wear a face mask.

29.    Plaintiff alleges that, very soon after his continued efforts to

request reasonable accommodations for his disability, on January 10, 2022, Defendant

issued him a termination notice based on the very same past tardy arrivals as it had

disciplined him for on December 8, 2021.

30.    Thus, Plaintiff alleges that, on January 10, 2022, Chris Howcroft

gave him a written termination of employment based on the past tardy arrivals.

Plaintiff alleges the termination notice correctly omitted the November 1, 2021 date,

which had been incorrectly included in the December 8, 2021 warning.  Plaintiff

alleges this termination notice was based on the same eight tardy arrivals that

Defendant had listed in the December 8, 2021 warning.  Plaintiff alleges the

termination notice included no other alleged tardy arrivals before or after December 8,

2021 or other reason for termination.

31.    Plaintiff alleges he contacted his supervisor and Human Resources

and reminded them that he had requested accommodations for tardy arrivals.  As a

result of Plaintiff's complaint, Defendant put Plaintiff's termination was "on hold"

while his accommodation requests were reviewed.

32.    During this process, Plaintiff alleges that he reminded Howcroft and Carter that he had submitted a doctor's note asking for accommodation regarding his tardy arrivals.  Plaintiff alleges that Defendant told him that it was placing his termination temporarily on hold while his request for accommodation was investigated.

33.    Plaintiff alleges that, two days later, on January 12, 2022, Carter sent him a request for further clarification of his request for reasonable accommodation of the mask-wearing policy, which required his doctor to answer specific questions.

34.    Plaintiff alleges that, on or about February 2, 2022, Dr. Williams filled out the ADA Accommodations Request for Medical Certification paperwork provided by Defendant further explaining Plaintiff's TBI and PTSD, and requesting a specific exemption for one to four (1-4) tardy arrivals of fifteen to thirty (15-30) minutes after scheduled arrival time per month.

35.    Thus, Plaintiff alleges that, on February 2, 2022, Dr. Williams filled out the provided paperwork regarding reasonable modification of the mandatory mask-wearing policy.  This paperwork explained Plaintiff's PTSD, affirmed that all mask options had been previously explored, without success, and requested that the company's mask wearing policy be modified for Plaintiff so when he had to wear a face mask could be for only short periods of time.

36.     Plaintiff alleges Dr. Williams also provided a letter requesting accommodation of his PTSD via limited long-haul/out-of-state driving assignments, especially in snowy conditions and the allowance to use personal assistive equipment, in the form of a pair of tinted lenses, which are not vision correction lenses and do not indicate vision impairment or impaired driving ability.

37.     Plaintiff alleges that a coworker whose name Plaintiff does not remember, whom Plaintiff believes to be a manager in the maintenance division, had informed him, "You are only employed here because of your disability.  They are looking for a way to get rid of you."  He alleges this coworker told Plaintiff that he would not receive fair treatment because of his disability.

38.     Plaintiff also alleges that he never informed this manager about his disability, and alleges that Defendant must have shared Plaintiff's private health information with this manager.

39.     Soon thereafter, Plaintiff alleges that he asked Carter how individuals outside of his chain of command knew about his private medical information since he had not disclosed his disability to this other manager.  Carter denied that his medical information had been shared, but had no explanation for how other coworkers knew of Plaintiff's medical conditions.

40.    Plaintiff alleges that, after he requested reasonable accommodations, Defendant substantially cut his hours, while giving temporary employees shifts which he could have worked.  He alleges that, because of the information that he had received that Defendant was seeking a way to get rid of him and the substantial cut in his hours, he felt like he had no alternative but to quit rather than risk a termination on his employment record.

41.    Plaintiff alleges the last day he actually worked for Defendant was Friday, February 11, 2022.

42.    Plaintiff alleges these circumstances constituted a constructive discharge.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FAILURE TO ACCOMMODATE PLAINTIFF'S DISABILITY

43.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 42 above as if alleged in full herein.

44.    To state a prima facie case of failure to accommodate, Plaintiff alleges facts which establish, or tend to establish, that: (1) he is a person with a disability, as defined by the ADA; (2) he is "otherwise qualified" to perform the essential functions of the job he held or desired, with or without a reasonable accommodation; (3) he requested a "plausibly reasonable accommodation"; and (4)

Defendant refused, declined or failed to accommodate his disability. *See, generally, Aubrey v. Koppes,* 975 F.3d 995, 1005 (10th Cir. 2020).

45. Plaintiff alleges he has several impairments, including TBI and PTSD. Plaintiff alleges these impairments substantially limit several of his major life activities, including his ability to care for himself, concentrate, interact with others, think, learn, speak, sleep, and work.

46. Plaintiff alleges he was otherwise qualified to do the job he held or desired in that he had successfully performed the duties of the job he held with Defendant for several weeks, with and without reasonable accommodations.

47. Plaintiff's allegations satisfy the first two elements of his prima facie case of failure to accommodate.

48. Plaintiff alleges that he requested plausibly reasonable accommodations. "[T]he term 'reasonable accommodation' refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of [her] job. *Punt v. Kelly Services,* 862 F.3d 1040, 1051 (10th Cir. 2017). Plaintiff alleges that he requested reasonable accommodations on several occasions. Plaintiff alleges the accommodations he was requesting were extremely reasonable. Plaintiff alleges he requested flexibility in his arrival time. Plaintiff alleges that such flexibility would have spared him disciplinary action for his late

arrivals, many of which were less than 15 or even 10 minutes late. Plaintiff alleges that

he requested flexibility in the obligation to wear face masks. Plaintiff alleges this

request is an extremely easy accommodation to work around because the vast majority

of his job duties take place outside of the company offices or alone in his truck.

49.    Plaintiff alleges that, by denying or failing to address these

requests in a timely manner, Defendant denied these accommodations.

50.    Plaintiff's allegations satisfy the third element of his prima facie

case of failure to accommodate.

51.    Plaintiff alleges that, after an employee makes an accommodation

request, both parties have an obligation to proceed in a reasonably interactive manner

and to engage in good-faith communications to identify a reasonable accommodation.

*See Yinger v. Postal Presort, Inc.,* 693 Fed. Appx. 768, 773 (10th Cir. 2017) (*citing*

*Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1178 n.12 (10th Cir. 1999).

52.    Plaintiff alleges he supported his requests for accommodation by

providing medical documentation. Thus, Plaintiff alleges that any supposed failure to

provide necessary medical information does not preclude him from claiming that

Defendant failed to provide him with a reasonable accommodation.

53.    Plaintiff alleges that the accommodations he requested were

effectively denied when weeks passed without any granting of the accommodations

and the company took disciplinary action against him, which demonstrated that the

accommodations had not been granted.

54.    Plaintiff alleges that, as part of his failure to accommodate claim,

he does not have to prove an adverse employment action.  *See Exby-Stolley v. Board of*

*County Commissioners,* 979 F.3d 784 (10th Cir. 2020).

55.    Nevertheless, Plaintiff alleges that Defendant did not engage in or

continue the interactive process to find other ways to respond to Plaintiff's requests or

to provide him with reasonably equivalent accommodations, but terminated his

employment, then stayed the termination, but substantially cut his hours, thereby

constructively ending his employment.

56.    Plaintiff's allegations satisfy the fourth element of his prima facie

case of failure to accommodate.

57.    Plaintiff's allegations state a prima facie case of failure to

accommodate.

### SECOND CAUSE OF ACTION
### DEFENDANT SUBJECTED PLAINTIFF TO DISPARATE
### TREATMENT AND A CONSTRUCTIVE DISCHARGE
### BASED ON DISABILITY

58.    Plaintiff incorporates by this reference all allegations listed in

paragraphs 1 through 57 above as if alleged in full herein.

59.     To state a prima facie case of discrimination based on disability, Plaintiff alleges facts which establish, or tend to establish, that: (1) he is a member of a protected class; (2) he was qualified for the position he held or desired; (3) Defendant subjected him to disparate and/or adverse employment action; and (4) the circumstances surrounding the disparate and/or adverse action give rise to an inference of discrimination.  *See, generally, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

60.     As set forth above, Plaintiff alleges that he has a disability, and that he was qualified for the position he held or desired.

61.     As such, Plaintiff's allegations satisfy the first two elements of his prima facie case of disparate treatment.

62.     Plaintiff alleges that Defendant treated him differently than other employees because of his disability.

63.     Plaintiff alleges Defendant subjected him to disparate treatment on the multiple occasions with respect to his late arrivals, face mask wearing requirements and work hours given to him to work.

64.     Plaintiff alleges Defendant ignored his multiple requests for reasonable accommodation and then began taking disciplinary action against him due to his disability.

65.    Plaintiff also alleges that Defendant took adverse actions against him.  An adverse employment action includes a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007).

66.    Defendant alleges Defendant took adverse action against him by issuing him disciplinary actions and then constructively discharging his employment.

67.    Plaintiff alleges that these actions were disparate adverse actions because they effected a "significant change in the plaintiff's employment status." *Haynes v. Level 3 Communications, L.L.C.,* 456 F.3d 1215, 1224 (10th Cir. 2006).

68.    Plaintiff alleges Defendant issued him a termination notice based on duplicate discipline, because it covered the same tardies as the prior month's written warning.  Plaintiff alleges that the termination notice was based on the late arrivals caused by his disability, which, after he reminded Howcroft and Carter of his request for accommodation, Defendant stayed.

69.    Plaintiff alleges that, even after the company issued the termination notice, an individual in a management position informed him that Defendant was "looking for a way to get rid of him" and he was only still employed because of his disability.  Plaintiff alleges this seemed like an informed opinion to him,

because it aligned with the events which shortly occurred, including the termination

notice in January 2022.

70.    Moreover, the individual was outside of plaintiff's chain of

command and knew that Plaintiff was disabled, which is private medical information

that Plaintiff had not shared with this individual.

71.    Plaintiff alleges that these circumstances reasonably led him to

believe that his private medical information was being shared around the Company on

an indiscriminate basis, without limiting the information to need-to-no individuals

within his chain of command.

72.    Plaintiff alleges that, soon after taking disciplinary action against

him, Defendant cut his work hours, which had the effect of "starving him out".

73.    Plaintiff alleges that this was a disparate action, which also

satisfies the third element of his prima facie case of disparate treatment.

74.    Plaintiff alleges that, after these events transpired, a reasonable

individual would have felt that his employer was going to fire him, which would have

caused a reasonable person to feel compelled to resign, which he did.

75.    Plaintiff alleges that, in January 2022, Defendant constructively

discharged him from his employment.  Termination of employment is a classic adverse

action.

76.    As such, Plaintiff's allegations that the Defendant constructively discharged him satisfy the third element of his prima facie case of disparate treatment.

77.    Plaintiff alleges that the circumstances surrounding these disparate and adverse actions give rise to an inference of discrimination on the basis of disability.  Potential circumstances that give rise to an inference of discrimination include: (1) disparate treatment which, but for the employee's protected trait, would be different, *International Union v. Johnson Controls, Inc.,* 499 U.S. 187, 200 (1991); and (2) evidence that the protected trait actually motivated the employer's decision. *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544 (1971).  Based on the instances of disparate and adverse treatment alleged above and the manager's comment to him about the company "looking for a way to get rid of him", Plaintiff alleges that Defendant constructively terminated his employment because of his disability.

78.    Plaintiff also alleges his disability actually motivated Defendant's decision to constructively terminate his employment.

79.    As such, Plaintiff's allegations satisfy the fourth element of his prima facie case of disparate treatment.

80.    Plaintiff's allegations state a prima facie case of disparate treatment on the basis of disability.

**THIRD CAUSE OF ACTION**
**DEFENDANT RETALIATED AGAINST PLAINTIFF**

81. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 80 above as if alleged in full herein.

82. To state a prima facie case of retaliation, Plaintiff alleges facts which establish, or tend to establish, that: (1) he engaged in protected activity in opposition to discrimination; (2) thereafter, Defendant took adverse action against him and a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action. *Argo v. Blue Cross and Blue Shield of Kansas, Inc.,* 452 F.3d 1193, 1202 (10th Cir. 2006).

83. Plaintiff alleges that he engaged in protected opposition to discrimination. A protected activity is one in which the individual has participated in a charge of discrimination under the law or opposed a practice prohibited by the law. "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [anti-discrimination statutes]." *Hinds v. Sprint/United Management Co.,* 523 F.3d 1187, 1203 (10th Cir. 2008). Plaintiff alleges he did just that.

84. The Tenth Circuit Court has held also that requests for reasonable accommodation can be protected activity under the Act. "For [a] retaliation claim, a

request for accommodation is adequate if it is 'sufficiently direct and specific, giving notice that [the employee] needs a special accommodation.'" *Foster v. Mt. Coal Co., LLC,* 830 F.3d 1178, 1188 (10th Cir. 2016).

85.    Plaintiff alleges that he engaged in protected activity when he requested various reasonable accommodations.

86.    Plaintiff alleges that he communicated that he needed special accommodation regarding late arrival times and mask-wearing on several occasions. Plaintiff alleges that each of these requests for accommodation qualifies as protected activity and that, by making such requests, he brought the anti-discrimination statutes into play.

87.    As such, Plaintiff's allegations satisfy the first element of his prima facie case of retaliation.

88.    Plaintiff alleges that, during and after engaging in protected activity, Defendant took materially adverse actions against him.  In *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006), the Supreme Court set forth the standard to be used in  determining what constitutes a materially adverse action.  The Supreme Court explained that "materially adverse" means that the harm must be significant.  Specifically, an employee must show that the action "well might have dissuaded a reasonable worker from making or supporting a charge of

discrimination." *Id.* The determination is to be made objectively, and, thus, must be measured against how a "reasonable worker" would feel or act. *Id.* However, the Supreme Court emphasized that whether any given act constituted retaliation may depend upon the particular circumstances. *Id.* at 69.

89.    Plaintiff alleges that Defendant subjected him to a materially adverse actions when it issued him discipline regarding late arrivals, when it asked him to resubmit his request for accommodation, implying that his initial requests for accommodation were never taken seriously or evaluated properly, when it issued him a letter of termination, and when it constructively discharged him from employment. Finally, Plaintiff's personal medical information was somehow made known to employees in the company outside of his direct chain of command.

90.    Plaintiff alleges that he was not given any temporary accommodation while his requested accommodations were being evaluated.

91.    Plaintiff alleges the December 8, 2021 written warning was a materially adverse action. Plaintiff alleges the constructive ending of his employment was definitely a materially adverse action.

92.    As such, Plaintiff's allegations satisfy the second element of his prima facie case of retaliation.

93.    Plaintiff alleges that a causal connection exists between the protected activity and the materially adverse action.  "A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."  *O'Neal v. Ferguson Construction Co.,* 237 F.3d 1248, 1253 (10th Cir. 2001) (*quoting Burrus v. United Tel. Co. of Kansas Inc.,* 683 F.2d 339, 343 (10th Cir. 1982)).  "[A] one and one-half month period between protected activity and adverse action, may, by itself, establish causation.  By contrast, . . . a three-month period, standing alone, is insufficient to establish causation."  *Id.* (*quoting Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999)).

94.    Inasmuch as Plaintiff's protected activity occurred only a few weeks before Defendant terminated his employment and then constructively discharged him, Plaintiff's allegations as to temporal proximity satisfy the third element of his prima facie case of retaliation.

95.    Plaintiff also alleges that statements made by the unknown manager that Plaintiff was still employed only due to his disability, but that Defendant is looking for a way to get rid of him supports an inference that the company's adverse actions were directly related to the protected activity in which he engaged.

***Pretext***

22

96.    "Once a [Plaintiff] establishes a prima facie case of [retaliation], the burden then appropriately shifts to the employer to rebut the inference that its motives were retaliatory by articulating that the discharge was for a legitimate non-retaliatory reason." *Adair v. City of Muskogee,* 823 F.3d 1297, 1314 (10th Cir. 2016). Plaintiff anticipates that Defendant will assert that, although it terminated Plaintiff, it placed that termination on hold, and then did not force Plaintiff to resign.

97.    At this point, the burden shifts back to Plaintiff to show that the stated reason is pretextual, "either directly by persuading the court that the [Defendant] was significantly motivated by retaliation for his exercise of statutory rights, or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Adair v. City of Muskogee,* 823 F.3d 1297, 1314 (10th Cir. 2016). Accordingly, an employee must "produce evidence that the employer did more than get it wrong [it] must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden [retaliatory] agenda." *Johnson v. Weld County, Colo.,* 594 F.3d 1202, 1211 (10th Cir. 2010).

98.    In the present case, Plaintiff alleges that Defendant's expected explanation will be unworthy of credence and that Defendant constructively discharged him because of his requests for accommodation and complaints. Thus, Plaintiff alleges Defendant's reason for the termination is a pretext for retaliation.

## IV.  DAMAGES

99.    Plaintiff alleges Defendant's actions and inactions have caused him various losses, injuries and other damages, including lost wages, lost benefits, longer trips in subsequent employment, more strenuous work in subsequent employment, financial hardship and stress, and emotional distress.

## V.  RELIEF REQUESTED

Accordingly, based on the above allegations, claims and damages, Plaintiff requests the following relief, specifically an Order and Judgment:

1. Declaring that Defendant discriminated against Mr. Hardy on the basis of his disability, and retaliated against him, in violation of the Title VII of the Civil Rights Act, and the ADA;

2. Awarding Mr. Hardy "make whole" relief, by awarding Mr. Hardy the value of his lost wages and the value of his lost benefits from the time Defendant constructively terminated Mr. Hardy's employment until Mr. Hardy secures comparable employment, or for a period of two years, whichever occurs first;

3. Awarding Mr. Hardy his reasonable attorney's fees and costs;

4. Awarding Mr. Hardy such other relief as may be just and equitable.

DATED this 14th day of February, 2024.


       */s/ David J. Holdsworth*
       David J.  Holdsworth
       *Attorney for Plaintiff*

## VERIFICATION

Larry Hardy, being first duly sworn, upon his oath, deposes and says that he is the Plaintiff in the above-entitled action, that he helped prepare and has read the foregoing COMPLAINT and understands the contents thereof, and the statements made therein are true to the best of his knowledge and recollection.


_/s/ Larry Hardy_ _____
Larry Hardy


SUBSCRIBED AND SWORN to before me, a Notary Public, this _____ day of _____, 20___.


_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:        RESIDING AT: _____

_____